IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE<br>EXTRADITION OF SOTIRIOS PAPPAS | Case No. 23 CR 515<br><br>Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

This matter arises out of an extradition request from Greece pursuant to a treaty in force between the United States and Greece.[1] Sotirios Pappas was arrested pursuant to a Complaint and warrant issued in this district on October 3, 2023. Pappas has moved for release on conditions pending his extradition hearing and a decision on extradition. The government seeks detention. The Court held detention hearings on October 23, 2023 and October 30, 2023. The question before this Court is whether Pappas poses a risk of nonappearance and whether there are special circumstances that warrant his release. While release is the exception and not the norm in extradition matters, the Court finds that release is warranted here and accordingly grants Pappas' motion for release and denies the government's motion for detention.

**Background**

Pappas is a 49-year-old dual citizen of the United States and Greece. Doc. [17] at Ex. A. He began residing in Chicago in 2004, where he met and married his spouse. *Id.* at Ex. B. Together,

---

[1] Treaty of Extradition Between the United States of America and the Hellenic Republic, U.S.-Greece, May 6, 1931, 47 Stat. 2185, *as supplemented by* the Protocol Between the United States of America and Greece with Respect to the Interpretation of Article I of the Treaty of Extradition of May 6, 1931, U.S.-Greece, Sept. 2, 1937, 51 Stat. 357, and the Protocol to the Treaty of Extradition Between the United States of America and the Hellenic Republic, signed May 6, 1931, and the Protocol thereto signed 2 September 1937, as contemplated by Article 3(2) of the Agreement on Extradition between the United States and the European Union signed 25 June 2003, signed 18 January 2006, S. TREATY DOC. NO. 109-14 (2006) (collectively, the "Treaty").

1

they have three minor sons. *Id.* Pappas was naturalized as a United States citizen on December 21, 2009. *Id.* at Ex. A. He works as a financial advisor at Merrill Lynch in Schaumburg, Illinois. *Id.* at Ex. C.[2] He is heavily involved in the community, including his religious community of St. John the Baptist Greek Orthodox Church in Des Plaines. *Id.* at Ex. B.

On September 29, 2023, a Complaint was filed pursuant to 18 U.S.C. § 3184 seeking the extradition of Pappas to Greece. *See generally*, Doc. [1]. The Complaint for extradition stems from conduct occurring in 2002 between Pappas and Heracles Raptis ("Raptis") in Greece. *Id.* at 2-4. Raptis alleged Pappas represented himself as a successful stockbroker and expert in the derivatives market on the Athens Stock Exchange, with the Athens-based securities firm, Magna Trust. *Id.* at 2-3. Pappas also allegedly told Raptis he would not only guarantee the full return of any money Raptis invested but significant profits. *Id.* at 3. Based on Pappas' representations, Raptis invested €100,000. *Id.* Raptis received two or three small payments ranging from €10,000 to €26,500 that were allegedly profits from the investments Pappas made for Raptis, after which Raptis invested an additional €200,000. *Id.* at 3-4. Pappas failed to provide Raptis any documentation of an investment account, instead providing a personal check for €1,500,000 as a guarantee. *Id.* at 4. Pappas subsequently stopped paying Raptis profits and stopped returning his calls. *Id.* Concerned, Raptis attempted to cash the personal check, which bounced. *Id.* Raptis then contacted Magna Trust, discovering Pappas had never worked there and there was no investment account in Raptis' name. *Id.* at 4. Based on the alleged conduct, Pappas was charged with one count of fraud, in violation of Article 386 of the Greek Criminal Code on June 11, 2003. *Id.* at 145.

Pappas was convicted on October 29, 2009, sentenced to six years of incarceration, and ordered to bear the legal costs of the proceedings of €120. *Id.* at 161. Pappas appealed the

---

[2] *See also* https://fa.ml.com/illinois/schaumburg/the_pappas_thompson_braun_group/ (last visited Oct. 30, 2023).

conviction with the Court of Appeals of Nafplio, Greece. *Id.* at 2. The appeal was dismissed on procedural grounds on April 22, 2013. *Id.* According to a Greek attorney for Pappas, the first appeal was dismissed due to a failure of counsel to include a statement that they were the same lawyer who represented Pappas in the lower court. Doc. [23] at Ex. H ¶ 10. Pappas' counsel notes this was a "display of excessive formalism." *Id.* at Ex. H ¶ 9. After this denial, Pappas appealed to the Supreme Court, 6th Criminal Division of Greece. Doc. [1] at 2. The Supreme Court also dismissed the appeal on procedural grounds on January 13, 2014. *Id.* Specifically, Pappas' counsel alleges the Supreme Court dismissed the appeal because a petition could only be granted if the appeals court *convicted* the defendant. Doc. [23] at Ex. H ¶ 11. As Pappas' first appeal did not convict him of anything, instead dismissing on procedural grounds, the Supreme Court ruled they were unable to review Pappas' case. *Id.* Throughout the entirety of the legal process, Pappas resided in the United States and appeared in his Greece criminal case through defense counsel. *See* Doc. [1] at 110, 123. Thus, while he was not physically in Greece, he actively participated and defended himself in the criminal proceedings.

On August 28, 2018, the Deputy Prosecutor Niki Mouzaki in the Public Prosecutor's Office of the Court of Appeal of Nafplio issued an arrest warrant for Pappas. *Id.* at 2. Four years later, on July 19, 2022, Greece submitted a verbal note to the Department of State concerning the extradition of Mr. Pappas. *Id.* at 10. On February 28, 2023, Greece submitted a formal request through diplomatic channels for Pappas' arrest and extradition. *Id.* at 169. On October 3, 2023, Pappas was arrested and initially appeared before this Court. Doc. [7].

The government moved to detain Pappas pending the extradition proceeding (Doc. [7]; Doc. [18]; Doc. [21]; Doc. [26]) and Pappas seeks release (Doc. [16]; Doc. [23]). Both parties have fully briefed and argued the issue to the Court. As conditions of release, Pappas has pledged:

(1) a $50,000 cashier's check from Nick and Dora Souleles; (2) Pappas' 401(k), valued at $21,249.69 as of September 30, 2023; (3) surrender of all passports; (4) location monitoring technology; (5) posting of Pappas and his wife's home as security; (6) continued employment; (7) residing with third-party custodian, Mr. Nick Souleles (brother-in-law) or Mrs. Georgia Pappas (spouse); and (8) that Pappas will submit to supervision by Pretrial Services. Doc. [16] at 9; Doc. [23] at 2-3.

**Discussion**

Under 18 U.S.C. § 3184, when there is a treaty for extradition between the United States and any foreign government, a judge may issue a warrant for arrest. After said arrest, the judge must conduct a hearing to determine whether the evidence is sufficient to sustain the charge under the provisions of the treaty. 18 U.S.C. § 3184; *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981) (explaining the extradition process and that Federal Rules of Evidence and Criminal Procedure do not apply in extradition hearings).

Before deciding the issue of extradition, the Court considers whether a defendant should be detained or released pending a decision on extradition. While the Bail Reform Act of 1984 has a presumption in favor of release pending trial, the federal statute, 18 U.S.C. § 3181 *et seq.*, and Supreme Court precedent in this area reverses this standard, finding a presumption of detention in extradition proceedings and explaining only that "special circumstances" justify release. *Wright v. Henkel*, 190 U.S. 40, 63 (1903); *see also United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) ("There is a presumption against bail in extradition cases"). The reasoning behind this reversed presumption is that extradition cases involve an overriding national interest in complying with treaty obligations and if a foreign fugitive absconded, it would result in diplomatic embarrassment and could harm foreign relations. *See In re Extradition of Molnar*, 182 F. Supp. 2d 684, 687 (N.D. Ill. Feb. 1, 2002) (citing *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal.

1990)); *see also United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) ("The Court's primary concern was that our Government be able to deliver the accused"); *Matter of Requested Extradition of Kirby*, 106 F.3d 855, 859 (9th Cir. 1996) (concern the United States would not satisfy legal obligations of the treaty). The parties agree that a defendant seeking bond in an extradition case must show that they are neither a flight risk nor a danger to the community, and only then can the court consider if special circumstances warrant release. Doc. [6] at 18-19; Doc. [16] at 3-4. This two-step process has generally been accepted across the country. *See, e.g.*, *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 472-73 (S.D. Tex. Dec. 30, 2010) (collecting cases); *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 58-64 (D. Mass. Aug. 17, 2010); *Matter of Extradition of Lee*, 2023 WL 2414447, at *1 (D.N.J. Mar. 8, 2023); *Matter of Extradition of Tautvydas*, 2023 WL 1069853, at *3 (N.D. Ill. Jan. 27, 2023).

I. **Risk of Flight**[3]

First, this Court looks to Pappas' risk of flight and options available to mitigate the risk. The government alleges Pappas is a flight risk because he is a fugitive and has failed to surrender to Greece. Doc. [21] at 1-2. Pappas refutes this, citing his robust community and family ties, his history of living openly in the United States, his employment with an established business, and his residency and strong ties to this district. Doc. [16] at 4-9.

The Court agrees Pappas is a low flight risk, if a flight risk at all. First, Pappas has strong community and family ties. Pappas has resided in the district since 2004. Doc. [17] at Ex. B. He has not lived a nomadic lifestyle, instead he been steadily employed, married, purchased a home,

---

[3] The United States does not assert that Pappas will pose a danger to the community. *See* Doc. [6]; Doc. [16] at 4; Doc. [21]; Doc. [23]; Doc. [26]. This Court also finds Pappas is not a danger to others and does not need to address this factor further.

involved with his church, had three children, and set down roots within the community.[4] *Id.* This weighs against risk of flight because Pappas is anchored to the community where he works and where his family has been based for the last nineteen years. *Id.* Second, Pappas has been living in the United States and neither party has indicated any other foreign or even domestic ties where he might abscond. Indeed, he is a United States citizen. Pappas has no criminal history in the United States and thus there is not a record of him violating U.S. laws, failing to appear at court proceedings, or not respecting court orders, such as conditions of release. Indeed, contrary to the government's assertion that Pappas is a fugitive, he has been living openly and notoriously using his given name, including on his work website and LinkedIn profile. *Id.* at Ex. B, Ex. C.[5] Additionally, Pappas participated in the Greek legal process while remaining in Chicago, hiring a defense attorney to represent him in Greece and choosing to file multiple appeals. *See* Doc. [1] at 110, 123. This also demonstrates that he has not evaded the proceedings but sought to confront them, even though he was residing in the United States and not Greece. Pappas has no substance abuse or mental health history, and he appears to have lived a stable and quiet life in a Chicago suburb with lots of friends and family support, as indicated by the letters submitted to the Court. Accordingly, Pappas has exhibited that his ties to this district are strong, and combined with his past law-abiding history in the United States, this indicates he is a low flight risk.

While the government is correct that Pappas has not voluntarily surrendered to Greece and, as a result, there is still a potential risk of avoiding surrender, these concerns can be mitigated through conditions of release. As discussed in detail below, this Court is imposing significant and

---

[4] In support of Pappas ties to the community, he produced over fifteen letters from family members, former employers, church staff, and other members of his community. Doc. [17] at Ex. B.

[5] *See also* https://fa.ml.com/illinois/schaumburg/the_pappas_thompson_braun_group/ (last visited Oct. 30, 2023); https://www.linkedin.com/in/sampappas1105 (last visited Oct. 30, 2023).

substantial conditions for release including surrender of all passports, a secured bond, location monitoring technology, home detention with a third-party custodian, continued employment and submission to supervision by Pretrial Services. Doc. [16] at 9; Doc. [23] at 2-3. These conditions are more than sufficient to mitigate the slight risk of flight here. Thus, Pappas has overcome the first hurdle for release on conditions.

### II. Special Circumstances

As detention is not warranted on danger to the community or a risk of flight, the Court turns to reviewing the "special circumstances" for his release on bail. As noted, there is a presumption against bond in extradition proceedings and only "special circumstances" justify release. *Wright*, 190 U.S. at 63. However, there is no binding precedent this Court can turn to in reviewing what constitutes a "special circumstance," as neither the Supreme Court nor Seventh Circuit has reviewed this issue. Similarly, other Circuits have offered little guidance resorting to mere synonyms when attempting to explain what constitutes a "special circumstance." *See United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) (defining "special circumstances" as situations where the justification for release is "pressing as well as plain"); *Leitner*, 784 F.2d at 160 (defining "special circumstances" as a pressing circumstance, "when the requirements of justice are absolutely peremptory"). There has been a notorious lack of detail as to what constitutes special circumstances. Many courts have identified situations that do not constitute special circumstances. *See, e.g.*, *Leiner*, 784 F.2d at 161 (affirming detention because low risk of flight, bond, and unblemished record did not support a finding of special circumstances); *Kin-Hong*, 83 F.3d at 525 (revoking bail as Hong Kong's reversion to China did not constitute a special circumstance); *United States v. Howells*, 2020 WL 6822980, at *3 (N.D. Ill. Nov. 20, 2020) (COVID-19 was not a special circumstance); *In re Yusev*, 2013 WL 1283822, at **3-4 (N.D. Ill. Mar. 27, 2013) (politically motivated extradition and ties to the community did not meet special circumstances);

7

*Matter of Extradition of Noeller*, 2017 WL 6462358, at **7-8 (N.D. Ill. Dec. 19, 2017) (epileptic seizures not a special circumstance); *Matter of Extradition of Schumann*, 2018 WL 4777562, at *6 (N.D. Ill. Oct. 3, 2018) (financial dependence of relatives on defendant alone did not constitute a special circumstance). This Court has also reviewed cases where judges have found special circumstances and released the defendant. *See, e.g.*, *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981) (affirming bail when juvenile charged and lack of suitable holding facility); *Extradition of Kirby*, 106 F.3d at 863-65 (affirming bail when delay, parity with another case, and pending injunction constituted special circumstances); *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. June 30, 1909) (defendant needing release to pursue civil case constituted special circumstances); *Taitz*, 130 F.R.D. at 445-46 (lengthy extradition hearing, lack of prior record, allergic reaction to soap used in correctional facilities, and inability to continue religious rituals constituted special circumstances); *Extradition of Molnar*, 182 F. Supp. at 688-89 (provisional complaint, financial assistance to seriously ill mother, lack of fugitive status, possible delay, litigation circumstances and dedication of community that posted security for release constituted special circumstances).

Certain things remain true among these line of cases. One, courts have generally lamented that the term "special circumstances" is vague, undefined, and leaves the definition in the eyes of the beholder. *See Extradition of Noeller*, 2017 WL 6462358, at *3 ("[T]he concept of 'special circumstances' began as and continues to be an undefined (but not unexplored) judicial creation."). Second, in reviewing these cases, there are no consistent themes as to what does or does not constitute special circumstances. Courts appear to make their decisions based on the particular facts of the case and the circumstances of their particular defendant. Third, judges have reached vastly different results as to whether certain attributes of a defendant constitute a special circumstance, for example, the lack of diplomatic necessity for detention, possibility of bail in

8

requesting country, likelihood of success on the merits, delay, and medical conditions of defendant, and there is little consistency among courts across the country on these issues. *Compare Castaneda-Castillo*, 739 F. Supp. 2d at 57-64 (lack of diplomatic necessity for detention, possibility of bail in requesting country, likelihood of success, and delay constitute special circumstances) *with Matter of Extradition of Carr*, 2020 WL 4816052, at **3-7 (N.D. Ill. Aug. 18, 2020) (lack of diplomatic necessity for detention, possibility of bail in requesting country, likelihood of success, COVID-19, and delay did not constitute special circumstances); *compare Matter of Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1220-21 (D. Nev. July 27, 1993) (requesting country's bail consideration was a special circumstance) *with Matter of Extradition of Rouvier*, 839 F. Supp. 537, 540-41 (N.D. Ill. Oct. 22, 1993) (requesting country's bail was irrelevant and not a special circumstance); *compare Extradition of Noeller*, 2017 WL 6462358, at **7-9 (medical care for epileptic seizures not a special circumstance) *with Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989) (serious deterioration of health while incarcerated constituted a special circumstance). Indeed, for nearly every special circumstance that Pappas has put forth with legal authority, the government has cited a case taking the opposing view.

As this Court has purveyed the legal landscape on the issue of special circumstances and the above considerations, it has come to three conclusions that the Court will apply in rendering its decision here. First, in extradition matters, detention is the norm and release the exception. This is, of course, the opposite approach of the Bail Reform Act. *See United States v. Salerno*, 481 U.S. 739, 755 (1987). But this is not unprecedented in our laws. For example, when a defendant violates their supervised release, the defendant (and not the government) bears the burden of proving that they are not a danger to the community or a risk of flight by clear and convincing evidence, a heavy burden for a defendant to bear, making release the exception and not the norm.

*See* Fed. R. Crim. P. 32.1(a)(6). The heightened requirement of special circumstances laid out by the Supreme Court in *Wright* and subsequent case law is similar, in this Court's view, to the flipped presumption on detention in supervised release matters. And while, there is a presumption of detention, it is not an insurmountable presumption and bail can be granted in extradition cases when warranted. The second conclusion reached by this Court is that special circumstances involves balancing two competing values. To put this in context, under the Bail Reform Act, a court is faced with balancing a defendant's liberty interest while awaiting the conclusion of criminal proceedings with the need to ensure the defendant does not flee or cause harm to others during that period. In extradition matters, the liberty interest of the defendant still exists but the competing value is the United States' interest in complying with its treaty obligations, which is to deliver the defendant to the country requesting extradition, and not incur national embarrassment by failing to do so. *See Extradition of Molnar*, 182 F. Supp. 2d at 687. While the national interest strongly favors detention in extradition cases as dictated by *Wright*, if the unique characteristics of the case warrant release and can also satisfy the government's obligation to return the defendant to the country requesting extradition, courts should consider those situations as "special circumstances." Third, this Court concludes that judges have significant discretion in deciding what constitutes a special circumstance, in line with the above principles, given the lack of binding case law, lack of definition of the term special circumstances, and conflicting decisions among district courts across the country. As a result, a court can consider the unique posture of the case or the characteristics of the defendant in exercising its discretion.

One more threshold issue needs mention. The preliminary question of which standard of proof applies to bond proceedings in extradition cases has not been resolved. The issue has not been decided by the Seventh Circuit, and there is a split among federal district courts about whether

a defendant must establish "special circumstances" by preponderance of the evidence or clear and convincing evidence. *See Extradition of Carr*, 2020 WL 4816052, at *3 n.1; *Extradition of Garcia*, 761 F. Supp. 2d at 475 ("[T]here is a disagreement among the federal district courts regarding the burden of persuasion that a potential extraditee must satisfy."). However, the Court will not review this open question, as Pappas has presented sufficient evidence to establish special circumstances under either evidentiary standard.

Keeping these principles in mind, the Court finds release is warranted due to: (1) the delays in Defendant's case that is now over twenty years old; (2) Defendant's lack of fugitive status and extremely remote risk of flight; (3) the significant and substantial release conditions being placed on Defendant; and (4) the underlying litigation. The Court exercises its discretion in finding that, collectively, the characteristics of this case and this defendant constitute special circumstances.

First, the Court looks to the facts surrounding the inordinate amount of delay by Greece in seeking extradition. Extradition can occur once an individual has been charged or convicted of the commission of an offense. *See* 18 U.S.C. §§ 3187, 3042, 3183. The Court notes the delay in extradition here weighs in favor of release, as Greece exhibited a lack of urgency in retrieving Pappas. First, the underlying conduct at issue occurred over twenty-one years ago. Doc. [1] at 2-4. Pappas was originally charged with this crime on June 11, 2003, while still residing in Greece. *Id.* at 1, 145. The government has not asserted that Pappas violated any conditions of release by traveling and eventually moving to the United States in 2004 while the fraud charge was pending. *See* Doc. [1]; Doc. [17] at Ex. B. Greece did not take any action to extradite Pappas in 2004, or for the next nineteen years. Doc. [1] at 2-6. Indeed, even after the conviction in 2009, Pappas was not extradited. *Id.* Pappas remained in the United States as the conviction was appealed and the appeals were dismissed on April 22, 2013, and on January 13, 2014. *Id.* at 2. After the final appeal

11

dismissal on January 13, 2014, four years lapsed before Deputy Public Prosecutor Niki Mouzaki in the Public Prosecutor's Office of the Court of Appeal of Nafplio issued an arrest warrant on August 28, 2018. *Id.* Even after the arrest warrant was issued, another four years passed, until July 19, 2022, before Greece submitted a note for Pappas' arrest and extradition. *Id.* at 10. Unlike other cases where the delay in the proceedings was seven months (*United States v. Nolan*, 2009 WL 4544699, at *2 (N.D. Ill. Dec. 1, 2009)), two years (*Matter of Extradition of Budrys*, 2019 WL 1958566, at *3 (N.D. Ill. May 2, 2019)), or three years (*Extradition of Carr*, 2020 WL 4816052, at *4), the delay in requesting extradition was abnormally long and exhibits a lack of urgency in pursuing this matter. Greece's request for extradition occurred approximately nineteen years after Pappas left for the United States, fourteen years after the original conviction, nine years after the appeals process was exhausted, and four years after the arrest warrant was issued. Greece had numerous opportunities over the last nineteen years to extradite Pappas but did not do so.[6] That certainly is the Greek government's prerogative, and this Court does not question or challenge those decisions. But it is hard for this Court to deprive a defendant of his liberty for the next several months when Greece has not demonstrated that his detention or extradition is a priority for the last nineteen years. Greece's interest in ensuring Pappas' immediate return is belied by the delay in seeking extradition. Greece did not seek to deprive the defendant of his liberty interest over this time, allowing him to live in the United States and potentially travel anywhere in the world. The Court is left wondering why it must now, 19 years later, deprive Pappas of his liberty interest for the next several months while he awaits the conclusion of his extradition proceedings. As discussed below, the Court has fashioned conditions of release that provides for the prompt

---

[6] Similarly, as represented by the government during the detention hearing, Greece did not place liens on Pappas' home to recoup funds pursuant to the conviction until May 2023.

return of Pappas with little to no risk that the United States will be unable to fulfill its treaty obligations.

Second, the Court notes that contrary to many other extradition cases, Pappas has not been living as a fugitive. Some courts have held that an extremely low risk of flight might rise to the level of special circumstances. *See In the Matter of the Extradition of Jeremy Barock Hulsh*, Case No. 23 CR 74, Doc. [32] at 7-8 (N.D. Ill. Mar. 9, 2023); *see also In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006) (lack of a risk of flight rises to the level of a special circumstance in and of itself). This Court finds Pappas' prior history living openly while complying and participating in the Greek legal process combined with his extremely remote risk of flight to be a factor in the finding of "special circumstances." Pappas moved to the United States in 2004. Doc. [17] at Ex. B. He has been living openly and notoriously, using his birth name while working in the community and building a life with a spouse and three minor children. *Id.* at Ex. B. Pappas has been an investment adviser at Merrill Lynch for the last four years and, as discussed above, his bio can easily be found on the internet. *Id.* at Ex. C. He has not, for instance, been living as a fugitive with a false passport alluding capture. *See Matter of Extradition of Schumann*, 2018 WL 4777562, at *6. Instead, Pappas took steps to become naturalized as a United States citizen, again using his given name and information, fourteen years ago. Doc. [17] at Ex. A. He did not hide from but actively participated in the Greek legal proceedings, hiring counsel to appear on his behalf and pursuing multiple appeals. Doc. [1] at 110, 123. This cooperation and compliance with the legal process exhibits that Pappas is not a fugitive but an active individual properly participating in the legal system in Greece. True, as the government points out, Pappas has not voluntarily surrendered or returned to Greece on his own. While that concept is a factor, it is not the only factor for the Court to consider. Pappas' past participation in the legal system and

low risk of flight, when combined with the other factors articulated, weigh in favor of releasing him and preserving his liberty interest.[7]

Third, defense counsel has proposed, and this Court grants, significant and substantial conditions for release. The proposed conditions for release would not be granted in a case proceeding under the Bail Reform Act, as the Court must implement the least restrictive conditions in that situation. *See* 18 U.S.C. § 3142(c)(1)(B). Here, the opposite approach is implemented and constitutes special circumstances. The Court is placing drastic restrictions on Pappas. These restrictions greatly inhibit Pappas' liberty interest, as they will affect his ability to travel, where he lives, and how he functions daily. In order to secure release, Pappas has proposed a myriad of different conditions including:

(1) A $50,000 cashier's check from Nick and Dora Souleles;

(2) Pappas' 401(k), valued at $21,249.69 as of September 30, 2023;[8]

(3) Surrender of all passports;

(4) Location Monitoring technology;

(5) Home Detention;

(6) Travel restricted to the Northern District of Illinois

(7) Continued employment;

---

[7] The Court also notes that there is no notoriety about this case or with this particular defendant, and thus any potential bond concerns would likely not cause harm to diplomatic relations.

[8] Pappas also offered his family home, but partly due to liens placed on his home by Greece, there is no longer sufficient equity in this home to use as security for a bond.

(8) Reside with third-party custodian, Mr. Nick Souleles (and not his immediate family);[9] and

(9) That Pappas will submit/report to supervision by Pretrial Services.

The Court finds that the conditions proposed will assure Pappas' appearance at future court proceedings and negate the chances Pappas will abscond. These conditions will assist in protecting the government's national interest while simultaneously accounting for Pappas' personal liberty interest. This factor supports the finding of special circumstances.

Fourth, this Court considers the underlying litigation. Courts are generally correct that it is extremely difficult to evaluate the underlying criminal case as it requires an evaluation of foreign substantive procedure and law. *Noeller v. Wojdylo*, 922 F.3d 797, 805 (7th Cir. 2019) ("[E]xtradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law."). But, although a weaker consideration, this Court's review of the Complaint and underlying documents uncovered unusual occurrences that factor into the totality of the circumstances. According to an affidavit submitted by his defense counsel in Greece, Pappas' first appeal was allegedly dismissed due to a failure of counsel to include a statement that they were the same lawyer who represented Pappas in the lower court, which then impacted and allowed the second appeal to also be dismissed procedurally. Doc. [23] at Ex. H ¶¶ 10, 11. According to his counsel, "appeals to higher courts are the norm in Greece" and the appellate decision was a "display of excessive formalism." *Id.* at ¶ 9, Ex. A at 4. While the Court need not decide the validity of these statements, it is noteworthy that Pappas' case has only been substantively reviewed at the trial court level, and Pappas' trial was held without his presence. Additionally,

---

[9] Pappas also offered residence with his wife as a third-party custodian. However, the Court finds that third-party custodian Mr. Nick Souleles is a more suitable custodian who can better supervise Pappas based on the Court's questioning of Mr. Souleles during the detention hearing.

15

there may or may not be potential for this case be revised and repeated in accordance with 525 of the Greek Code of Criminal Procedure. *Id.* at ¶ 13. The government has not substantively responded to this assertion or provided contrary information. While this Court does not review the legal underpinning of Pappas' case, the Court notes the lack of substantive review is unusual and, when compiled with other factors, helps support a finding of special circumstances for release while the Court considers the government's case for extradition.

## Conclusion

For the foregoing reasons, the government's motion for detention is denied and Pappas' motion for release with conditions is granted. The conditions of release, as described above, are further detailed in a separate order. The Court is not expressing a view about the pending extradition proceedings, and nothing in this opinion should be taken in that manner. The Court has provided the parties a schedule to brief the extradition request and a hearing will be held on the United States' request to extradite Pappas. In this opinion, the Court has solely determined whether Pappas should be released on bond pending a decision on extradition. If the Court determines that extradition is warranted, it will order a surrender date for Pappas to return to custody for transport to Greece.

**SO ORDERED.**

Dated: November 2, 2023

_____

Sunil R. Harjani
United States Magistrate Judge